UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ERICA ADAMS                             CIVIL ACTION

VERSUS                                  NO: 07-9720

CITY OF GRETNA                          SECTION: R

## ORDER AND REASONS

Before the Court is defendant City of Gretna's two motions for partial summary judgment and plaintiff Erica Adams's motion to strike. For the following reasons, the Court GRANTS City of Gretna's motion for partial summary judgment on its *Ellerth/Faragher* affirmative defense, GRANTS Gretna's motion for partial summary judgment on after-acquired evidence, and DENIES Adams's motion to strike.

## I.    BACKGROUND

This case arises out a series of actions that culminated in the termination of plaintiff Erica Adams (Adams) as an employee of defendant City of Gretna (Gretna). On January 19, 2006, Ronnie Harris, mayor of Gretna, hired Adams as a full-time clerk for Gretna's Recreation Department. Between August of 2006 and

January of 2007, Donald Royal served as the Recreation Superintendent for Gretna and was Adams's direct supervisor. Jack Griffin, the Director of Public Works for Gretna, was Royal's supervisor.

Adams alleges that beginning in August of 2006 pornographic "pop-ups" would appear on her work computer several times per day. Although the source of the pop-ups was not apparent at the time, it later became clear that Royal had been viewing pornography on Adams's computer. Adams alleges that she complained to Griffin about the pornography in late November of 2006 but that nothing was done about it at the time.

In late December of 2006, Adams discovered a black plastic bag on a shelf in her office containing pornographic DVDs and personal financial materials belonging to Royal. Subsequently, Adams complained to Griffin about the materials and indicated that she believed it belonged to Royal. She also reported her suspicion that Royal had been viewing pornography on Recreation Department computers, including her own. Griffin and Mayor Harris confronted Royal about Adams's complaint, and Royal admitted to viewing pornography on a Recreation Department computer. Royal was then given the option to resign or be terminated. He chose to resign and his employment accordingly ended on January 5, 2007.

On January 10, 2007, Griffin and Mayor Harris met with Adams

to discuss the outcome of Adams's complaint about Royal. Adams alleges that Mayor Harris scolded her at this meeting for complaining about Royal. According to Adams, Mayor Harris told her she "should have been a big girl and should have dealt with it [herself]" and asked if she "was happy with the outcome, because this is not what [he] wanted." Adams Depo. at 234.

Following Royal's resignation, Griffin asked another City employee, Andy McMenamin, to keep an eye on the Recreation Department while the City tried to refill the Recreation Superintendent position vacated by Royal. Adams alleges that "McMenamin would come and just sit in [her] office and stare and follow [her] around" and that he would "call quite frequently to know [her] whereabouts." Adams Depo. at 216-18.

On January 24, 2007, Adams applied for the Recreation Superintendent position vacated by Royal. Adams advanced to the second round of interviews but was not selected for the position. On March 1, 2007, Griffin gave Adams a letter of termination, effective immediately. Later that same day, police officers escorted Adams to the Gretna Community Center to collect her belongings.

On April 16, 2007, Adams filed a charge with the Equal Employment Opportunity Commission alleging unlawful discrimination based on race and sex and unlawful retaliation. On October 4, 2007, the Department of Justice mailed Adams a

-3-

Notice of Right to Sue Within 90 Days.  On December 20, 2007,

Adams filed a complaint in this Court, challenging her treatment

and discharge on three separate grounds.  First, she claims that

her work situation amounted to a hostile work environment in

violation of Title VII of the Civil Rights Act of 1964.  Second,

she claims that Gretna unlawfully retaliated against her for

engaging in activity protected by Title VII.  Third, she claims

that Gretna deprived her of liberty without due process of law.

Gretna moved for summary judgment on all of Adams's claims,

arguing that Adams could not prove the required elements of each.

In addition, Gretna moved to preclude Adams's recovery for front

pay and back pay under the after-acquired evidence doctrine

articulated by the Supreme Court in *McKennon v. Nashville Banner

Publishing Co.,* 513 U.S. 352 (1995).  (R. Doc. 25-3).

On June 12, 2009, this Court denied in part and granted in

part Gretna's motions.  (R. Doc. 88).  The Court denied Gretna's

motion in regard to Adams's retaliation claim, holding that it

would not be unreasonable for a jury to conclude that Gretna

terminated Adams in retaliation for reporting Royal's behavior.

The Court granted Gretna's motion regarding Adams's due process

claim because Adams presented no evidence that Gretna ever made

the reasons for her termination public.  *Id.*  In regard to

Adams's hostile work environment claim, the Court found that a

reasonable jury could conclude that the harassment in question

affected a term, condition, or privilege of Adams's employment. The Court delayed its final ruling on the issue, however, and allowed the parties extra time to submit supplemental briefing regarding whether Gretna's remedial actions sufficed to establish the *Ellerth/Faragher* affirmative defense. (R. Doc. 88). The Court also requested supplemental briefing on Gretna's after-acquired evidence argument.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in

the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

### A. The *Ellerth/Faragher* Affirmative Defense

Title VII of the Civil Rights Act of 1964 provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

The Supreme Court has distinguished between cases in which a

hostile work environment is created by the plaintiff's co-workers and cases in which the hostile work environment is created by the plaintiff's supervisor. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 n.4 (5th Cir. 2008). When co-workers are to blame, the employer can be held liable only if it "knew or should have known of the harassment and failed to take prompt remedial action." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005). By contrast, when the plaintiff's supervisor is responsible, the employer can be held vicariously liable for the supervisor's actions without any showing that the employer was personally negligent. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

The only affirmative defense available to employers in a supervisor sexual harassment case in which an employee alleges a hostile work environment is that announced by the Supreme Court in the companion cases of *Burlington v. Ellerth,* 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). *See Casiano v. AT&T Corp.*, 213 F.3d 278, Appendix (5th Cir. 2000). The *Ellerth/Faragher* defense is not available when a "tangible employment action" has been taken against the employee alleging a violation a Title VII. *See Watts v. Kroger Company*, 170 F.3d 505, 510 (5th Cir. 1999). The *Ellerth/Faragher*

-7-

affirmative defense allows an employer to avoid vicarious
liability if it can prove: "(a) that [it] exercised reasonable
care to prevent and correct promptly any sexually harassing
behavior, and (b) that the plaintiff employee unreasonably failed
to take advantage of any preventive or corrective opportunities
provided by the employer or to avoid harm otherwise." *Faragher*
524 U.S. at 807. *See also Lauderdale v. Texas Department of
Criminal Justice, Institutional Division*, 512 F.3d 157, 164 (5th
Cir. 2007) (upholding assertion of *Ellerth/Faragher* defense upon
independent satisfaction of both prongs). To succeed, the
employer must establish both prongs of the *Ellerth/Faragher*
affirmative defense; otherwise the employer is not protected from
vicarious liability for the supervisor's harassment. *See Casiano
v. AT&T Corporation*, 213 F.3d 278, Appendix (5th Cir.
2000)(depicting a supervisor sexual harassment roadmap that
illustrates the conjunctive nature of the two *Ellerth/Faragher*
prongs).

    1.*Tangible Employment Action*

    The first step in evaluating the validity of Gretna's
*Ellerth/Faragher* defense is determining whether Adams suffered a
"tangible employment action." *Ellerth*, 524 U.S. at 761-62.
*Ellerth* itself defines tangible employment actions as those that
"require[] an official act of the enterprise, a company act,"
such as "hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* In this case, there is no claim or evidence that a hostile work environment resulted in any tangible employment action. The *Ellerth/Faragher* is therefore a viable defense to Adams's hostile work environment claim.

    2.*Prong 1: Employer Remedial Action*

Gretna first argues that it exercised reasonable care to correct promptly any sexually harassing behavior by Royal. The Court finds that it did so. Ordinance No. 3023 sets forth the Gretna policy forbidding sexual harassment. (R. Doc. 24, Ex. V). The Ordinance requires Gretna's Chief Administrative Officer to immediately investigate any allegations of sexual harassment in conjunction with the City Attorney's Office. *Id.* Substantiated sexual harassment claims are then reported to the Mayor, along with a recommendation for remedial action. *Id.* The offending employee is then subject to discipline by Gretna, including potential termination.

Gretna argues that it responded immediately to Adams's complaints, confronted Royal, took appropriate remedial action as outlined in Ordinance 3023, and did each of the above in an expeditious manner. (R. Doc. 91). As previously stated, Royal's employment with Gretna ended on January 5, 2007. Adams first observed pornographic pop-ups on her computer in August 2006, complained about pornography on her computer in November 2006,

and complained about the black plastic bag containing pornographic DVDs and personal financial materials Royal left at her workstation in December 2006. Construing all facts in favor of Adams, no more than a month and a half passed between Adams first complaint and Royal's departure. Moreover, the months that did pass were those of November and December, which include the Thanksgiving and Christmas holidays.

The Fifth Circuit has found remedial employer actions involving similar delay as reasonable, even without an intervening holiday period. *See, e.g., Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 266 (5th Cir. 1999)(holding as "prompt" company's response one month after employee's complaint); *Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 971 (5th Cir. 1999)(finding employer's swift response and harasser's resignation as sufficient to meet the first-prong of the *Ellerth/Faragher* affirmative defense); *Frazer v. Angelina Coll.,* 67 F.Appx 251 (5th Cir. 2003)(holding defendant's investigation and subsequent action one week after employee's complaint as constituting the exercise of reasonable care). The Fifth Circuit has also held the first-prong of the *Ellerth/Faragher* affirmative defense satisfied without inquiry into the employer's actual response time in a given instance. *See Lauderdale v. Texas Department of Criminal Justice, Institutional Division*, 512 F.3d 157, 164 (5th Cir.

2007)(satisfying first-prong of *Ellerth/Faragher* defense by providing training programs on sexual harassment policies).

Adams argues that Gretna allowed Royal's sexual harassment to continue for "several months." In doing so, Adams conflates her initial exposure to pornographic "pop-ups" in August 2006 with the filing of her initial complaint in November 2006. After Adams formally filed her complaint as outlined in Ordinance 3023, Gretna investigated the incident and took appropriate remedial action against Royal. The response of any employer to an unsubstantiated complaint of sexual harassment is unlikely to be immediate. It will take employers some time to investigate the incident and determine an appropriate course of action to take with either the employee, the harassing supervisor, or both. Gretna's remedial actions were reasonably prompt and commensurate with the policies and procedures outlined in Ordinance 3023. The Court therefore finds the first-prong of the *Ellerth/Faragher* affirmative defense satisfied.

3.*Prong 2: Employee Pursuit of Corrective Opportunities*

Gretna next argues that Adams unreasonably failed to take adequate and appropriate advantage of any preventative or corrective opportunities provided by Gretna. (R. Doc. 91). Gretna city Ordinance 3023 also provides the appropriate guidelines for Gretna employees to report incidents of perceived sexual harassment. The Ordinance encourages "an employee who

believes he or she has been the subject of sexual harassment [to] report the alleged act immediately or as soon as possible." (R. Doc. 25, Ex. V). Although the ordinance lists the employee's immediate supervisor as the individual to whom complaints should be made, it also notes that "[i]t is not necessary for an employee to complain first to an offending supervisor in order to report sexual harassment." *Id.*

According to Adams, she first complained about the pornographic "pop-ups" on her computer to Griffin, Royal's supervisor. Gretna does not challenge Adams's choice to report to Griffin, as opposed to Royal. (R. Doc. 91). Nor was Adams's choice of Griffin outside the parameters of Ordinance 3023, which does not require harassment complaints to be filed in any particularized chain of command. The Court does not therefore find Adams's actions unreasonable because Adams failed to follow the appropriate procedures for issuing her complaint. *See Lauderdale v. Texas Department of Criminal Justice, Institutional Division*, 512 F.3d 157, 165 (5th Cir. 2007)(finding employee's failure to follow-up on her complaint unreasonable); *Williams v. Barnhill's Buffet Inc.*, No. 08-60136, 290 F.Appx. 759, 762 (5th Cir. 2008)(holding that informal complaints to co-workers could not preclude summary judgment on second *Ellerth/Faragher* prong).

Gretna also argues that Adams's unreasonable failure derives from waiting too long between the time when she first observed

pornographic pop-ups and the time when she first filed a
complaint. (R. Doc. 91). Adams first became aware of the
pornographic pop-ups in August 2006. Yet she did not file a
formal complaint until late November 2006 at the earliest.
During the months between, the pornographic pop-ups appeared more
often and Gretna remained unaware that a problem existed.
Compare *Puebla v. Denny's Inc.*, 294 F.Appx. 947, at **1 (5th Cir.
2008)(holding employee's actions as reasonable when employee
reported alleged sexual harassment the day after it occurred),
*with Thompson v. Naphcare, Inc.* 117 F.Appx 317 (5th Cir.
2004)(holding employee's actions as unreasonable when employee
reported incident two months after it occurred).

   The Fifth Circuit has addressed the issue of reasonable
delay under the second prong of the *Ellerth/Faragher* defense on
several occasions. It first did so in *Watts v. Kroger Company*.,
170 F.3d 505 (5th Cir. 1999). In *Watts*, the Fifth Circuit
reversed the entry of summary judgment in favor of an employer on
the grounds that a jury could find that the employee's delay
before issuing her complaint was not unreasonable. *Id.* at 510.
The plaintiff employee waited until July to file the complaint
when the alleged harassment occurred in the spring. Presumably,
this amounts to a delay of two to three months. In *Casiano v.
AT&T Corp.,* 213 F.3d 278 (5th Cir. 2000), five months passed
between the alleged first incident of sexual harassment and the

-13-

employee's filing a formal complaint. *Id.* at 281. Unlike *Watts*, however, the Fifth Circuit found the employee's actions unreasonable and held that the employer satisfied its burden and would have been entitled to judgment as a matter of law on the *Ellerth/Faragher* defense if the case went to trial. *Id.* Lastly, in *Wyatt v. Hunt Plywood Co., Inc.*, the plaintiff employee initially complained about her supervisor's inappropriate sexual advances to her supervisor's supervisor. 297 F.3d 405, 407 (5th Cir. 2002). These initial complaints were met with more harassment, unfortunately, not remedial action. The plaintiff employee did not file a subsequent complaint until six months after, when her immediate supervisor removed the plaintiff employee's pants in public. *Id.* The Fifth Circuit held that the plaintiff employee's response to the initial harassment was reasonable, but her failure to follow-up for six months thereafter was not. *Id.*

The gravamen of Adams's formal complaint in November 2006 concerned pornographic pop-ups on her work computer. Adams did not complain that Royal directly harassed her in any way. Adams's claim derives from the offensive nature of the pop-ups themselves, and their ability to "alter the conditions of [Adams's] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Given the nature of Adams's Complaint, doing nothing about the pornographic

pop-ups for four months was unreasonable.

The language of *Faragher* states that an employee must "avoid harm otherwise," and that "if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided." *Faragher*, 118 S.Ct. at 2292. The Fifth Circuit has held that this "implies that a plaintiff should not wait as long as it usually takes for a sexually hostile working environment to develop." *Indest*, 164 F.3d at 267. While Adams's work environment may not have been actionable under Title VII when the pornography first began to appear on her government office computer, *Faragher* and *Indest* instruct that Adams should not have idly sat by until her work environment degenerated into a hostile one. Adams's hostile work environment claim centers on the offensiveness of the pornographic pop-ups she received on her work computer. Yet, Adams did nothing in response to the appearance of the pop-ups themselves. Instead, she waited, allowed the "offensive conduct" to continue, and effectively blocked Gretna from taking remedial measures before her work environment became potentially actionable under Title VII. The Supreme Court has explicitly stated that the "primary objective" of Title VII is "not to provide redress, but to avoid harm." *Faragher,* 118 S.Ct at 2275. Adams's delay undermines this objective and the Court therefore finds it unreasonable.

*Watts, Casiano, and Wyatt* do not set-out an exact time line upon which to evaluate the reasonableness of Adams's delay. The cases do suggest, however, that the reasonableness of an employee's delay is more suspect after two or three months than before. *See Wyatt,* 297 F.3d at 407 (discussing three distinct time periods). This case is not distinguishable from the five and six month delays held unreasonable in *Casiano* and *Wyatt*. Construing all facts and inferences in the light most favorable to the non-moving party, four months transpired between the first pornographic pop-up Adams observed and her complaint. Adams could have notified her supervisor to help mitigate harm. Waiting to complain about ambiguous conduct might be reasonable. In this case, however, waiting four months to complain about the exact conduct Adams found offensive is not. The Court thus finds that Gretna has satisfied its burden on both prongs of the *Ellerth/Faragher* affirmative defense and the Court GRANTS Gretna's motion for summary judgment accordingly.

## B.   After-Acquired Evidence

Gretna also contends that evidence acquired during discovery demonstrates a separate and sufficient ground for Adams's termination. Specifically, Gretna alleges that Adams's time records from Blahnik Vision Center (Blahnik) illustrate a practice of double-billing, a discernable form of fraudulent

conduct for which Adams would have been otherwise fired.  Adams

argues that Gretna knew that she was working two jobs well before

her March 2007 termination and even made accommodations for her

odd schedule.

The Supreme Court delineated the bounds of the after-

acquired evidence doctrine in *McKennon v. Nashville Banner

Publishing Co.*, 513 U.S. 352 (1995).  In *McKennon*, contrary to

the argument of Gretna, the Supreme Court rejected a rule barring

any recovery of back pay per se in cases in which "an unlawful

motive was the sole basis for firing."  513 U.S. at 358-60.  The

Court held instead that back pay recovery was still appropriate,

and should be calculated "from the date of the unlawful discharge

to the date the new information was discovered."  *Id*.

Employers seeking to invoke the after-acquired evidence

doctrine "must first establish that the [employee's] wrong doing

was of such a severity that the employee would have in fact been

terminated on those grounds alone if the employer had known of it

at the time of the discharge."  *Id*. at 362-63.  *See also Smith v.

Berry Co.*, 165 F.3d 390, 395 (5th Cir. 1999)(citing *McKennon,* 513

U.S. at 362-63); *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d

1106, 1108 (5th Cir. 1999)(stating that the pertinent inquiry is

whether employer would have fired the employee once it discovered

the wrongdoing).  An employer must demonstrate, by a

preponderance of the evidence, that its actual employment

practices would have led to the employee's termination, not simply that the employee's conduct was in contravention of the employer's stated policies. *See Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999)(quoting *O'Day v. McDonnell Douglas Helicopter Corp.*, 79 F.3d 756, 759 (9th Cir. 1996)(articulating the preponderance of the evidence standard and rejecting a clear and convincing evidence standard); *Sellers v. Mineta,* 358 F.3d 1058, 1064 (8th Cir. 2004); *Dotson v. Pfizer, Inc.,* 558 F.3d 284, 298 (4th Cir. 2009).

Gretna puts forward two pieces of evidence suggesting that Adams would have been fired for fraudulent billing practices, independent of the reasons given for her March 2007 termination. (R. Doc. 95). The first is the declaration of Susan E. Percle, the Chief Administrative Officer for the City of Gretna. (R. Doc. 25, Ex. Z). The second is the employment record of a former Gretna employee fired for fraudulent billing. (R. Doc. 95, Ex. A). In response, Adams offers her own declaration and that of Robert Folse, one of Adams's co-workers in the Gretna Recreations Department. (R. Doc. 92). When combined, the evidence Adams presents suggests at most that Gretna was in fact aware of Adams's second job at Blahnik, that Adams often worked for Gretna at night, and that Adams purposefully (under direct order from her supervisor) misallocated the hours she worked for Gretna to the daytime hours because she could not clock-in at the park

office at night.

Gretna first argues that the Court should disregard Adams's declaration as self-serving. A non-moving party cannot defeat a motion for summary judgment by "using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). When an affidavit supplements earlier deposition testimony, however, the Court can consider it. *See id.* (citing *Clark v. Resistoflex Co.,* 854 F.2d 762, 766 (5th Cir. 1988). Adams's declaration supplements her prior sworn testimony, rather than contradicts it. As Gretna points out, Adams did not previously testify that she "regulated" her hours pursuant to her supervisor's directive. (R. Doc. 95). Adams deposition testimony suggests only that she would head-back to her job with Gretna after completing her work at Blahnik. (R. Doc. 25, Ex. E). The Court does not find Adams's declaration, which specifies how she filled-in her time cards, to contradict this statement. The declaration simply expounds upon the procedure Adams used to record her work hours. The deposition testimony, on the other hand, addresses how Adams physically worked the hours she did at both jobs.

Gretna next argues that its knowledge of Adams's job at Blahnik does not equate to condoning fraudulent conduct. The Blahnik time records provide evidence that Adams was billing two

employers for full seven-hour work days. Adams has not come forward with any evidence that rebuts this. Adams can at most account for half of the double-billed time. On average, Adams's hours at the two employers' locations overlap for seven hours each work day. October 27, 2006, provides a good example. On that day, Adams billed Gretna for nine hours worked, 10:00 a.m. to 7:00 p.m. She also billed Blahnik for seven hours worked, 10:00 a.m. to 5:00 p.m. Thus, Adams should have worked sixteen total hours on October 27, 2006. Resolving all factual conflicts in favor of Adams, and assuming the statement in Adams's declaration is true, Adams misallocated the time she worked for Gretna, but actually did still work nine hours. Adams declaration states that she would often work from 6:00 p.m. to 10:00 p.m. If Adams worked these evening hours on October 27, she must still account for five additional hours billed to Gretna. If Adams worked those five hours before she clocked-in at Blahnik, she would have started working for Gretna sometime between 4:00 and 5:00 in the morning. Adams has pointed the Court to no evidence suggesting that she worked these odd morning hours, or that supervision of Gretna playgrounds was necessary at that time of day.

The Court finds that Gretna has carried its burden of showing that Gretna would have fired Adams, in fact. First, the declaration of Ms. Percle outlines that Adams's actions were

against Gretna's employment policy. While this is not sufficient in itself, Gretna also demonstrates that it has, in the past, fired an employee for double billing. Moreover, common sense corroborates Gretna's assertion that it would have fired Adams. *See O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 762 (9th Cir. 1996)(suggesting that common sense can corroborate company policy and support an employer's assertion that an employee would have been fired). Adams does not point the Court to any evidence refuting Ms. Percle's declaration concerning the illustrative employment record she attaches. The Court therefore GRANTS Gretna's motion for preclusion of front pay and back pay under the after-acquired evidence doctrine.

## C. **Motion to Strike**

In a related motion, Adams seeks to strike the Blahnik time records as exhibits at trial. (R. Doc. 49). Given the Court's holding above, Adams's motion to strike is hereby DENIED.

## IV. **CONCLUSION**

For the foregoing reasons, Gretna's invocation of the *Ellerth/Faragher* affirmative defense and motion for partial summary judgment regarding the defense is GRANTED. In addition, Gretna's claim that after-acquired evidence bars Adams's recovery of front pay and back pay is GRANTED. Adams's motion to strike

the Blahnik time records is DENIED.

New Orleans, Louisiana, this **2nd** day of September, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE